**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**DIANA M. LEWIS**                                                    **CIVIL ACTION**

**VERSUS**                                                              **NO. 06-10548**

**MICHAEL J. ASTRUE,**                                       **SECTION "S"(3)**
**COMMISSIONER OF SOCIAL**
**SECURITY ADMINISTRATION**

## REPORT AND RECOMMENDATION

Plaintiff, Diana M. Lewis ("Lewis"), seeks judicial review pursuant to Section 405(g) of

the Social Security Act (the "Act") of the final decision of the Commissioner of the Social

Security Administration (the "Commissioner"), determining that Lewis was not disabled and

denying her applications for disability insurance benefits ("DIB") and supplemental security

income ("SSI").   The Court has jurisdiction pursuant to 42 U.S.C. §405(g) and the matter has

been referred to the undersigned Magistrate Judge for findings and recommendations.

1

Currently before the Court are the parties' cross motions for summary judgment.   Having reviewed the parties' written submissions, the administrative record and the applicable law, the undersigned Magistrate Judge finds the there is substantial evidence in the record supporting the decision of the Commissioner that plaintiff can return to her relevant work, and thus, RECOMMENDS that the Court DENY plaintiff's motion for summary judgment #10, GRANT the Commissioner's cross-motion for summary judgment #12 and DISMISS the plaintiff's case with prejudice for the following written reasons.

## I. PROCEEDINGS

On February 20, 2002, the plaintiff filed an application for disability insurance benefits.[1] Plaintiff claimed inability to work as of July 1, 2001 due to back and knee problems.[2]   The Commissioner initially denied the plaintiff's application for benefits,[3] explaining that:

> You said that you became disabled on 2/08/2002 because of injuries sustained in a car accident in 1991, back, left knee, high blood pressure and stomach problems.   The medical evidence shows that you do have some limitations because of your conditions, however, these limitations are not considered totally disabling at this time.   You should be able to perform many types of sedentary jobs in our economy  at this time.   We realize that your condition prevents you from doing your past work, but it does not prevent you from doing work that requires less physical effort. Based on your age (42), education (13th) and past work experience, you can do other work.[4]

---

[1]*See* Application for Disability Insurance Benefits [Adm. Rec. 62-65, 68]; Application for Supplemental Security Income [Adm. Rec. 172-178].

[2]*See id*; Leads Protective Filing Worksheet [Adm. Rec. 65]; Adult Disability Report dated April 2, 2002 [Adm. Rec. 68].

[3]*See* Disability Determination and Transmittal [Adm. Rec. 37-42].

[4]*Id.* [Adm. Rec. 38].

Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").[5]

An evidentiary hearing was conducted in Metairie, Louisiana on August 26, 2003 by ALJ Juan C. Marrero.  Plaintiff was represented by counsel William Vincent, Jr. at the hearing,[6] pursuant to which, ALJ Marrero denied Lewis's claims.[7]  The Appeals Council granted plaintiff's request for review of the hearing decision[8] and remanded the case for further consideration of Lewis's subjective complaints and her maximum residual functional capacity.[9]

Following remand, a second hearing was conducted.[10]  On January 19, 2005, plaintiff appeared accompanied by counsel.  Additionally, Vocational Expert (VE) Todd Capielano was present throughout the hearing and testified.  Base upon the full records and two administrative hearings, the ALJ concluded that Lewis retains the residual functional capacity to perform her past relevant work as a maid as generally performed in the national economy at the *light* level. The ALJ relied on the VE's testimony that this work is described in the Dictionary of Occupational Titles (DOT) as light, unskilled work and found that this work exists in significant numbers in the national economy.   Therefore, the ALJ determined that the plaintiff is not

---

[5]*See* Request for Hearing [Adm. Rec. 45].

[6]*See* Transcript of August 26, 2003 Hearing [Adm. Rec. 215-233].

[7]*See* ALJ Marrero's Decision dated February 26, 2004 (finding that the plaintiff's capacity for light work is substantially intact and not compromised by any nonexertional limitations and further concluding that based upon plaintiff's age, education and work experience, Medical-Vocational Rule 202.21, Appendix 2, Subpart P, Regulations No. 4 directs a conclusion of "not-disabled" in her case) [Adm. Rec. 50-56].

[8]*See* Plaintiff's Request for Review of Hearing Decision dated April 10, 2004 [Adm. Rec. 57].

[9]*See* Appeal's Council's Order of Remand dated June 10, 2004 [Adm. Rec. 60-61].

[10]*See* Transcript of Hearing on January 19, 2005 before ALJ Marrero [Adm. Rec. 197-214].

entitled to a period of disability nor eligible for Supplemental Security Income payments.[11]  On September 21, 2006, the Appeals Council denied plaintiff's request for review.[12]

On November 27, 2006, Lewis filed the captioned matter seeking review of the Commissioner's determination and the case is now ripe for determination.

## II. JUDICIAL REVIEW

### A. "Substantial Evidence" Standard

The function of the court on judicial review is limited to determining whether there is "substantial evidence" in the record, as a whole, to support the final decision of the Commissioner as trier of fact, and whether the Commissioner applied the appropriate legal standards in evaluating the evidence.[13]  If the Commissioner's findings are supported by substantial evidence, they must be affirmed.[14]

"Substantial evidence" is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion.[15]  It is more than a scintilla, but may be less than a preponderance.  *Id*.  A district court may not try the issues *de novo*, reweigh the evidence, or

---

[11] *See* ALJ Marrero's Decision dated February 15, 2006 [Adm. Rec. 16-21].

[12] *See* Notice of Appeals Council Action dated September 21, 2006 (finding no reason under the applicable rules to review the ALJ's decision and denying plaintiff's request for review) [Adm. Rec. 4-6].

[13] *See* 42 U.S.C. § 405(g); *Masterson v. Barnhart,* 309 F.3d 267, 272 (5th Cir. 2002); *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993); *Carriere v. Sullivan,* 944 F.2d 243, 245 (5th Cir. 1991).

[14] *Martinez*, 64 F.3d at 173.

[15] *Richardson v. Perales,* 402 U.S. 389, 401 (1971); and *Spellman*, 1 F.3d at 360.

4

substitute its own judgment for that of the Commissioner.[16]   However, the district court must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence exists to support it.[17]   Any of the Commissioner's findings of fact which are supported by substantial evidence are conclusive, regardless of whether other conclusions are also permissible.[18]

## B. Eligibility for Disability Benefits

To qualify for Social Security income or disability insurance benefits, the plaintiff must meet the requirements set forth in the Social Security Act.[19]   Specifically, the plaintiff must be under age 65, file an application for benefits and be under a disability as defined by the Act.[20] Those claiming disability insurance benefits under the Act have the burden of showing the existence of disability.  "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than 12 months."[21] Establishment of "disability" within the meaning of the Act is twofold.  First, the claimant must demonstrate that she suffers from a medically determinable impairment. Second, the claimant

---

[16]*Ripley*, 67 F.3d at 555; *Spellman,* 1 F.3d at 360 .

[17]*Anthony v. Sullivan,* 954 F.2d 289, 295 (5th Cir. 1992); *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990); *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).

[18]*Ripley,* 67 F.3d at 555; *see also Arkansas v. Oklahoma*, 503 U.S. 91, 112 S.Ct. 1046, 117 L.Ed.2d 239 (1992).

[19]*See* 42 U.S.C. § 423(a).

[20]*See* 42 U.S.C. §§ 416(I), 423(a).

[21]*Id.* at  § 423(d)(1)(A).

must prove that her impairment or combination of impairments render her unable to engage either in the work she previously performed or other substantial gainful employment that exists in the national economy.[22]

The regulations include a five-step evaluation process for determining whether an impairment prevents a person from engaging in any substantial gainful activity. *Newton v. Apfel,* 209 F.3d at 453. The five-step analysis was cogently restated in *Shave v. Apfel*, 238 F.3d 592 (5th Cir. 2001):

> First, the claimant must not be presently working at any substantial gainful activity. Second, the claimant must have an impairment or combination of impairments that are severe. An impairment or combination of impairments is "severe" if it "significantly limits [a claimant's] physical or mental ability to do basic work activities." Third, the claimant's impairment must meet or equal an impairment listed in the appendix to the regulations. Fourth, the impairment must prevent the claimant from returning to his past relevant work. Fifth, the impairment must prevent the claimant doing any relevant work, considering the claimant's residual functional capacity, age, education, and past work experience. At steps one through four, the burden of proof rests upon the claimant to show he is disabled. If the claimant acquits this responsibility, at step five the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. If the Commissioner meets this burden, the claimant must then prove he in fact cannot perform the alternate work.[23]

The Court weighs four elements of proof in determining whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) claimant's subjective evidence of pain and disability; and (4) claimant's age, education, and work history. "The Commissioner, rather than the courts, must

---

[22]*Id.* at §§ 416(I)(1), 423(d)(2).

[23]*Shave*, 238 F.3d at 593.

resolve conflicts in the evidence."[24]

### C. Standards Applicable to Medical Evidence

The ALJ must follow the Guidelines set forth in 96-2p to determine whether "controlling weight" should be given medical opinions of a "treating source."  These guidelines are that: (1) the opinion must come from a "treating source;" (2) the opinion must be a "medical opinion;" (3) the treating source's medical opinion must be "well supported" by "medically acceptable" clinical and laboratory techniques; and (4) even if supported, the opinion must not be inconsistent with other substantial evidence.  Even if the ALJ finds that the treating source's medical opinion is not entitled to controlling weight, that does not mean that the opinion can be rejected.  "Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. §§ 404.1527 and 416.927."[25]

The factors provided in 20 C.F.R. 404.1527 and 416.927 include: (1) Examining relationship; (2) Treatment relationship, length of treatment, frequency of examination, nature and extent of relationship; (3) Supportability; (4) Consistency; and (5) Specialization.  "Good cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence."[26] Medical opinions of a specialist are generally accorded more weight than opinions of a source

---

[24]*Martinez v. Chater,* 64 F.3d 172, 174 (5th Cir. 1995).

[25]SSR 92-2p

[26]*Shave v. Apfel,* 238 F.3d 592, 595 (5th Cir. 2001); *Newton v. Apfel*, 209 F.3d 448, 456 (5th Cir. 2000).

not a specialist.[27]   However, specialization is only one of several factors considered in the evaluation of medical opinions.  In summary, the Commissioner has considerable discretion in assigning weight to medical opinions and is free to reject the opinion of any physician when substantial evidence supports a contrary conclusion.[28]

### III. FACTUAL BACKGROUND

### A. Administrative Hearings

Born on April 17, 1960, plaintiff was 44 years old at the time of the second hearing.[29] Lewis testified that she completed the tenth grade and then received a graduate equivalency diploma (GED).  She further admitted that she had worked as a housekeeper and a certified sitter for most of her life[30] until sometime prior to April 16, 2004, when she was involved in a second automobile accident.[31]  Plaintiff testified that after her second accident her back and neck pain worsened and her right leg would periodically give out on her.[32]  Lewis testified that since the second accident she remains in bed for most of the day.[33]

Plaintiff admitted that she has three children ages 18, 17 and 3 years old in her household.  Lewis testified that she drives, cooks, cleans and attends to household chores with

---

[27]*Moore*  v. *Sullivan,* 919 F.2d 901, 904 (5th Cir. 1990).

[28]*Greenspan*, 38 F.3d at 237; *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995); *Spellman*, 1 F.3d at 364; *Moore v. Sullivan,* 919 F.2d at 905.

[29]Transcript of Hearings [Adm. Rec. 202, 220].

[30]*Id.* at 202, 221.

[31]*Id.* at 202.

[32]*Id.* at 203.

[33]*Id.*

some help from her children, including the three year old.[34]  Lewis admitted that she is the primary caregiver for her three year old grandchild who lives with her.   In addition, plaintiff attends physical therapy twice a week and exercises on a treadmill machine.[35]

Plaintiff testified that she feeds the three-year old child, gets her own breakfast, takes her medication and then rests for three hours, along with the three year old.  The child's mother works full-time and the other children attend school.  Plaintiff further testified that, on the days that she feels really feels sick, the great grandparents take the three year old.[36]  Plaintiff testified at the August 26, 2003 hearing that she had to stay in bed all day long approximately three days during the week (not including weekends).[37]

Plaintiff testified that her medications, Flexeril and Vicodin, make her dizzy and nauseated and that her doctor told her to cut down on the dosage or take them at night.[38]  Plaintiff measured her pain on the average day as approximately level 6 on a 10 scale.  She indicated that the pain is more intense when the weather is cold or rainy.[39]  Lewis testified that she quit working as a sitter in June of 2000, which was long before her April 16, 2003 automobile accident.[40]  Indeed, at the outset of the second hearing on January 25, 2005, plaintiff agreed to

---

[34]*Id.* [Adm. Rec. 204, 230-231].

[35]*Id.* [Adm. Rec. 207,229].

[36]*Id.* [Adm. Rec. 208-210].

[37]*Id.* [Adm. Rec. 232].

[38]*Id.* [Adm. Rec. 207, 227-228].

[39]*Id.* [Adm. Rec. 204, 212].

[40]*See* January 25, 2005 Hearing Transcript [Adm. Rec. 202-203] .

revise her date of onset of disability from June, 2000 to the date of her second automobile accident (April 16, 2003).[41]  Lewis admitted that she has a lawsuit pending in connection with her second automobile accident which has not yet been settled or proceeded to trial on the merits.[42]

## B.  Medical History

Plaintiff takes issue with the ALJ's characterization of the medical record.  Plaintiff alleges that the ALJ erred in accepting Dr. Keppel's assessment as to her functional capacity over the evaluation of her treating physician (Dr. Altman).  The ALJ concluded that Lewis has the following severe impairments: arthritis of the left knee, obesity, hypertension, cervical spine strain and lumbar back strain.[43]  The ALJ further determined based upon the entire record that the plaintiff does not have an impairment or combination of impairments that meet or medically equals one of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1.[44]

Substantial evidence of record supports the ALJ's summary of medical findings and treatment of the plaintiff which are the subject of the following *de novo* review.

As of the revised date of alleged onset of disability (April 16, 2003), plaintiff was being treated by Dr. Stewart E. Altman for the following conditions: (1) *mild* cervical, thoracic and

---

[41]*Id.* at 199.

[42]*Id.* at 201.

[43]*See* ALJ Marrero's February 26, 2006 Findings of Fact at 18 (noting the medical records consulted including records of Drs. Nitsche, Altman, Vogel and consultative examiners' reports of examinations).

[44]*Id. at* 19.

lumbar spine strain; (2) *mild* bilateral shoulder pain; and (3) headaches.[45]   Plaintiff then reported to Dr. Altman that she still experienced pain in her back and left knee at times and complained of headaches, pain on the right side of her neck, both shoulders, chest and entire back.[46]   Dr. Altman's impression was mild cervical spine strain, mild thoracic spine strain, mild bilateral shoulder pain, mild/moderate lumbar spine strain, mild frontal post-traumatic headaches and a mild anterior chest contusion causally related to the recent automobile accident.[47]   Dr. Altman prescribed a course of conservative care, including moist heat, TENS therapy to the neck, back and shoulders and range of motion exercises for the neck and back.

Lewis was again seen by Dr. Altman on May 1, 2003 and May 27, 2003.   He noted that plaintiff continued to complain of "terrible" headaches, radiating pain from her neck to both arms, chest pain, low back pain radiating down to the left thigh and weak grip strength. Nevertheless, Dr. Altman concluded that medication and therapy were helpful.  He further indicated that plaintiff was not working at the time "but it is not due to the automobile accident."[48]   On June 17, 2003, Dr. Altman recommended an eye consult to address her complaints of blurred vision but otherwise found that plaintiff's condition was essentially the same and that medication was helpful.  He continued the treatment and medication regime.[49]  On her July 8, 2003 visit, plaintiff reported rare episodes of pins, needles and numbness to the left

---

[45] *See* Dr. Stewart E. Altman's September 23, 2003 Report to Frank Buck (Plaintiff's Counsel in her automobile accident litigation) [Adm. Rec. 137].

[46] *Id.* at 132.

[47] *Id.* at 133.

[48] *Id.* at 134.

[49] *Id.* at 135.

foot.   Plaintiff's range of motion of the cervical spine (bilaterally) was 40 degrees (flexion), 50 degrees (extension) and 70 degrees (rotation).   Clinic notes reflect *mild* pain, spasm and tenderness on movement and both shoulders could be abducted to 180 degrees.   Lewis's lumbar spine range of motion (bilaterally) was flexion of 80 degrees, extension of 30 degrees, lateral flexion of 40 degrees and rotation of 40 degrees.   Medications and therapy were continued and Lewis was *urged to increase the frequency of therapy*.[50]

On June 12, 2003, Dr. Altman executed a form entitled medical assessment of the plaintiff's ability to perform work-related activities, indicating that  Lewis was limited in her ability to lift and carry because of left knee and back pain.   With respect to standing/walking, Dr. Altman noted that it was "nothing to count on."[51]    Altman and Associates' medical records reflect that, within a month of that assessment (July 29, 2003), plaintiff was  engaged in range of motion exercises twice a week and *treadmill exercise at home*.[52]   Indeed, on July 8, 2003, Dr. Altman's associate (Dr. Heneghan) urged Lewis to *increase* the frequency of her therapy.   On September 19, 2003, MRIs of the cervical and lumbar spine were ordered.[53]   On October 14, 2003, Dr. Altman noted that plaintiff's neck was better but her low back was the same. Essentially, Dr. Altman's records reflect that Lewis had full range of motion in her cervical spine and only mild spasm and tenderness in her shoulders as well as only mild pain, spasm and

---

[50]*Id.*

[51]*See* Medical Assessment Form dated June 12, 2003 [Adm. Rec. at 119].

[52]*Id.* at 135.

[53]*Id.* at 131 .

tenderness in her lumbar spine.[54]  Dr. Altman's November 4, 2003 notes reflect that "she had

obtained maximum medical benefit from the services afforded at [his] office" and that she was

"discharged to the care of an orthopedist."[55]  He recommended an evaluation by an orthopedist

*after an MRI for chronic back and neck pain is conducted.*[56]

The November 18, 2003 MRI of plaintiff's cervical spine demonstrated head and neck

lifting to the left in conjunction with an upper thoracic dextroscoliosis, a small right

posterolateral disc protrusion at C5/6, a broad shallow bulge of posterior disc margin at C6/7 and

no other definite abnormality of the cervical spine.[57]  The November 18, 2003 MRI Lumbar

Spine Report notes mild sclerosis of articular processes at L5/S1 (with facet joints otherwise

unremarkable), central and root canals normal in size and configuration, normal extrathecal

nerves, thecal sac and contents and well developed symmetrical paraspinous muscles.  Other

than

multiple tiny central end plate perforations at most lumbar levels, minimal degradation at L2/3

and mild sclerosis of articular processes at L5/S1, the study demonstrated no other definite

lumbar spine abnormality.[58]

On April 2, 2004, plaintiff was seen by a neurosurgeon, Dr. Kenneth E. Vogel, who noted

that *patient relates being in good health until April 2003*, when she was involved in an

--------------------------------------------------

[54]*Id.* at 126.

[55]*Id.* at 126.

[56]*See* Consult Request executed by Dr. Altman [Adm. Rec. 130].

[57]*See* Magnolia Diagnostics, Inc. Cervical Spine MRI report [Adm. Rec. 144].

[58]*See* Magnolia Diagnostics, Inc. Lumbar Spine MRI Report [Adm. Rec. 145].

automobile accident.[59]  Dr. Vogel evaluated plaintiff's cervical/left arm pain and her lumbosacral

and left leg pain.  He found Lewis in *no acute distress.*  Cervical examination revealed a *mild*

degree of limitation of motion in all directions with a *moderate* degree of bilateral muscle spasm,

no brachial plexus tenderness and, with the exception of grip strength, her motor examination

was completely normal.  Sensory examination also revealed no abnormalities and plaintiff's

reflexes were equal bilaterally.  Lumbar examination similarly revealed only a *mild* degree of

limitation of motion and a *moderate* degree of bilateral muscle spasm.  Dr. Vogel further found

no scoliosis and motor and sensory examinations revealed no abnormalities.  Dr. Vogel agreed

with the radiologists impression, to wit: (1) herniated cervical disc vs. segmental cervical

instability and (2) herniated lumbar disc vs. symptomatic degenerative disc disease.   He

recommended the continuation of *conservative* medical care (physical therapy and medication).[60]

Upon re-evaluation by Dr. Vogel on March 23, 2004, plaintiff's straight leg raising test

was *negative* and there was only a *mild* degree of limitation of motion, a *mild* degree of spasm

and no scoliosis.  As before, her sensory examination revealed *no abnormalities*.  Motor

examination of the plaintiff was limited by pain and reflexes were trace.  The cervical

examination revealed only a *mild* degree of limitation of motion, a *mild* degree of spasm and

*mild* brachial plexus tenderness bilaterally.  Her motor and sensory examinations revealed no

abnormalities.  Plaintiff's reflexes were +1 and her grip strength measured at 50 bilaterally.[61]

Dr. Alberto Arrillaga's June 18, 2004 note indicates that Lewis presented with

---

[59]*See* Dr. Kenneth E. Vogel's Report dated March 2, 2004 [Adm. Rec. 141].

[60]*Id.* at 141-142.

[61]*Id.* at 140.

improvement of her cervical complaints and noted *no recent radicular type symptoms* in her upper extremities.  Her cervical range of motion was within normal limits but painful upon lateral flexion bilaterally.  Dr. Arrillaga further noted normal sensation and normal motor strength in her upper extremities.  He concluded that Lewis was "showing improvement" and recommended a rehabilitation/strengthening program twice weekly.  He further noted that Lewis does not work.[62]

On July 27, 2004, Dr. Thomas Cockerham of The Center for Physical Medicine similarly concluded that Lewis was progressing adequately and recommended that she continue with rehabilitation and massage therapy.  Dr. Cockerham advised Aleve and Tylenol for pain.  Cockerham's assessment dated August 26, 2004 concluded with "*resolving* cervical strain/myofascial pain" and recommended that Lewis continue therapy, massage and Aleve for pain as needed.[63]

On February 23, 2005, plaintiff was evaluated by a consultative examiner, Dr. Frederick L. Keppel, an orthopaedic surgeon.  Dr. Keppel observed that plaintiff ambulated with a *normal gait*.  Physical examination further revealed *no palpable spasm*, no pain on flexion, straight leg raise in the sitting position negative bilaterally, deep tendon reflexes intact and symmetrical and plaintiff's *neurological examination grossly intact*.  Plaintiff's left knee had no effusion and she demonstrated full extension and 130 degrees of flexion.  Regarding X-rays of the knee and spine, Dr. Keppel determined:

---

[62]*See* The Center for Physical Medicine Report dated June 18, 2004 [Adm. Rec. 139, 160]; see also notes dated November 10, 2004 and December 27, 2004 (noting stable gait, motor 5/5, sensory intact and negative straight leg raising test) [Adm. Rec. 156].

[63]*Id.* at 158; *see also* Notes dated October 5, 2004 (stating "rehab helping" and "continue cervical rehab" and "add lumbar rehab 2 times a week") *Id.*

> X-ray examination of the left knee showed a varus alignment with some early medial arthritic changes of the left knee.  There were no other abnormalities.  An X-ray examination of the lumbar spine was essentially negative.  The patient supplied and MRI of the lumbar spine, which showed no evidence of disc herniation.  It had evidence of multi tiny central end plate perforations at multiple levels.  There was minimal disc degeneration at L2/3.  There were no other abnormalities.[64]

Dr Keppel concluded that Lewis should be able to perform at least sedentary and light duty activities.  He noted that heavy lifting, excessive stooping, climbing or bending could aggravate her knee condition.  Dr. Keppel further recommended a weight reduction program in plaintiff's case.

## IV.  CONTENTIONS OF THE PARTIES

Lewis makes the following arguments: (1) the ALJ's erred by giving Dr. Altman's physical assessment no weight and giving more weight to Dr. Keppel's physical assessment; and (2) the ALJ erred in finding that Lewis is able to return to her past relevant work as a maid.

The Commissioner responds that there is very little medical evidence supporting plaintiff's claim that she is bed-ridden seven hours a day.  The defendant further noted that the ALJ properly ignored Dr. Altman's conclusory physical assessment, which was inconsistent with his medical findings and the findings of plaintiff's other treating and consulting specialists.  Moreover, the Commissioner submits that substantial evidence supports the ALJ's finding that, despite her impairments, the plaintiff can perform her past relevant employment (maid) *as it is generally performed in the national economy*.

---

[64]*Id.* at 166.

# V. ANALYSIS

## Substantial Evidence Supports the ALJ's Determination

The key issue in this appeal is the relationship between Lewis's subjective symptoms, her complaints of pain and the objective medical evidence.  There is substantial evidence to support the ALJ's conclusion that Lewis's allegations of "disabling" limitations are not corroborated by positive clinical or medical findings.

The ALJ properly evaluated the medical evidence, including records and assessments of Drs. Altman, Vogel and Keppel, *inter alia*.  As more specifically noted above, the records showed good range of motion in Lewis's neck, back, extremities, and all joints, as well as evidence of only mild and sometimes moderate spasm *on movement*.  Medical treatment records demonstrate that plaintiff appeared to be in no apparent distress, she exhibited a normal or stable gait, her straight leg raising tests were negative and her reflexes and sensory examinations showed no abnormalities.

Plaintiff's MRI results were essentially negative for significant objective findings and treating neurosurgeon Dr. Vogel found no significant abnormalities.  Dr. Cockerham specifically noted that Lewis's cervical and myofascial pain was resolving and that rehabilitation was a successful effort.  Dr. Keppel completed a Medical Source Statement of Ability to Do Work-Related Activities (Physical) form and determined that plaintiff could occasionally lift 25 pounds, frequently lift 20 pounds, and stand/walk for 6 hours out of an 8 hour workday.  [Adm. Rec. 167].  Dr. Keppel further determined that plaintiff's ability to sit was not affected, but that she could only occasionally climb, balance, kneel, crouch and crawl.  [Adm. Rec. 168].  Indeed, the medical evidence considered as a whole demonstrates that plaintiff is not as limited as Dr.

17

Altman's conclusory physical assessment states.

The MRI tests did not reveal any significant objective signs to support the plaintiff's allegations of *disabling* cervical and lumbar disease.  Serial physical examinations by plaintiff's treating physicians and specialists revealed that there was no evidence of muscle atrophy and all other signs and indications were essentially "normal."   Most notably, plaintiff's medical records uniformly indicate the absence of neurological deficits.  Throughout her course of medical treatment, plaintiff's appetite remained unchanged and she ambulated without any assistance and with a balanced gait.  Plaintiff has no history of hospitalization for treatment of *any* impairment during the pertinent time frame.

The medical record discloses no sound basis whatsoever for crediting claimant's complaints of *disabling* pain or other symptoms. The ALJ discussed all of the medical evidence available and articulated sound reasons for discounting the plaintiff's subjective complaints of *debilitating* symptomotology.

An ALJ has the discretion to evaluate credibility and to arrive at an independent judgment regarding pain as well as the duty to ultimately determine disability on the basis of the claimant's residual functional capacity to engage in gainful employment. Credibility determinations and conflicts in the evidence are properly resolved by the ALJ.[65]

On appeal, the district court's function is limited to a determination of whether the ALJ's findings are supported by substantial evidence. Clinical and medical evidence in the administrative file discussed above sufficiently support the ALJ's determination that the plaintiff can perform her past relevant work as it is generally performed in the national economy.

---

[65]*See Brown v. Apfel,* 192 F.3d 492, 496 (5th Cir. 1999).

18

The ALJ considered and rejected Dr. Altman's conclusions as to the plaintiff's limitations, finding that they were not well supported by the clinical/medical evidence of record. ALJ Marrero adequately explained his opinion in this regard. More particularly, Dr. Altman's physical assessment was inconsistent with his treatment records, test results and the assessments of plaintiff's treating specialists. An ALJ may properly reject the opinion of even a treating physician when that opinion is so brief and conclusory that it lacks strong persuasive weight or it is not supported by medically acceptable clinical or laboratory techniques or is otherwise unsupported by substantial evidence of record.[66]

The regulations require that the Court must first consider whether the individual can still do past relevant work as she actually performed it.[67]  Individual jobs within an occupational category as performed for particular employers may not entail all of the requirements of the exertional level indicated in the DOT.[68]

Plaintiff based the requirements of her past work on *her* statement in a work history report which states that she walked and stood for 8 hours a day.[69]  The Commissioner aptly points out the inconsistency in plaintiff's statement in the same form, *i.e.*, that she crouched for 7 hours in a workday.  Moreover, contrary to plaintiff's assertions, the inquiry does not end there. "When it is found that an individual cannot do past relevant work as he or she actually performed it, the adjudicator must consider whether the individual can do the work as it is generally

---

[66]*Leggett v. Chater,* 67 F.3d 558, 566 (5th Cir. 1995).

[67]*See* SSR 96-8p at *3.

[68]*See id.*

[69]*See* Work History Report [Adm. Rec. 84].

performed in the national economy."[70]   The determination of past relevant work "may rest on descriptions of past work as actually performed *or as generally performed in the national economy*."[71]   Here, ALJ Marrero determined that the plaintiff can perform her past relevant work as a maid as that job typically is performed in the national economy.[72]   Although the ALJ engaged the assistance of a vocational expert, expert vocational testimony was unnecessary.[73]

The ALJ may rely on the *Dictionary of Occupational Titles* to define the job as it is usually performed in the national economy.[74]  In determining whether a claimant can perform her past relevant work, the hearing officer may consider the functional demands of the job either as generally performed in the national economy or as actually performed by the claimant.[75] Because the ALJ's finding that Lewis has the residual functional capacity to meet the functional demands of her past relevant work *as it is generally performed in the economy* is supported by substantial evidence,  the ALJ properly found her not disabled.

SSR 99-2p provides that "[i]n assessing [residual functional capacity], all of the individual's symptoms must be considered in deciding how such symptoms may affect functional capacities." SSR 99-2p.  The ALJ fully complied with this requirement. Indeed, the hearing decision contains a thorough and exhaustive evaluation of plaintiff's symptoms based on the

---

[70]SSR 96-8p at *4.

[71]*Leggett v. Chater,* 67 F.3d 558, 564 (5th Cir. 1995) (italicized emphasis added); *Villa v. Sullivan,* 895 F.2d 1019, 1022 (5th Cir. 1990); *Jones v. Bowen*, 829 F.2d 524, 527, n. 2 (5th Cir. 1987).

[72]*See* Decision of ALJ Marrero dated February 15, 2006 [Adm. Rec. 21].

[73]*Kleintop v. Massanari,* 2001 WL 1516740 (N. D. Tex).

[74]*Id.* at n. 3.

[75]SSR 82-61.

medical evidence and her own testimony at the hearing.[76]

The ALJ has sole responsibility for determining a claimant's disability status.[77]  Where there is conflicting evidence regarding an issue reserved for the Commissioner, he has the responsibility to resolve that conflict.[78]  The final decision on whether a claimant is disabled for purposes of the Act is a legal one rather than a medical one, and that determination may be made only by the Commissioner.[79]

## VI. CONCLUSION

Substantial evidence supports the Commissioner's determination that Lewis has the residual functional capacity to perform the job of a maid as it is typically performed at a *light* level of exertion (standing/walking 6 hours in an 8 hour workday).   Because none of the points of error should be sustained, IT IS RECOMMENDED that the Commissioner's decision be AFFIRMED and that the plaintiff's complaint be DISMISSED WITH PREJUDICE.

## VII. OBJECTIONS

Objections must be: (1) specific, (2) in writing, and (3) served within ten days after being served with a copy of this report.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 1(a), 6(b) and 72(b) A party's failure to object bars that party from: (1) entitlement to *de novo* review by a district judge; and (2) appellate review of the unobjected-to factual findings and legal conclusions

---

[76]Decision of ALJ Marrero dated February 15, 2006  [Adm. Rec. 19-21].

[77]*Paul v. Shalala,* 29 F.3d 208, 211 (5th Cir. 1994); *Moore v. Sullivan,* 919 F.2d at 905.

[78]*Greenspan*, 38 F.3d at 237; *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995); *Spellman*, 1 F.3d at 364; *Moore*, 919 F.2d at 905.

[79]*See Tamez v. Sullivan*, 888 F.2d 334, 336 n.1 (5th Cir. 1989).

accepted by the district court, except upon grounds of plain error.  *Douglass v. United Services Automobile Association,* 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

New Orleans, Louisiana, this 19th day of September,  2007.


**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**